**S. R. Lewis and James Killelea, Appellees, v. DeForest Matteson, Appellant.**

**Gen. No. 8,062.**

Opinion filed November 19, 1929.

BOYS & OSBORN and MONAHAN & MONAHAN, for appellant.

BUTTERS & BUTTERS and C. B. CHAPMAN, for appellees.

MR. JUSTICE JONES delivered the opinion of the court.

R. R. Davis was the owner of a 296-acre farm near Marseilles in LaSalle county, subject to a trust deed made to appellee, S. R. Lewis, trustee, securing an indebtedness of $40,000, due March 1, 1926, and also subject to a second mortgage securing a debt of $3,000, due March 1, 1924. On May 22, 1922, Davis conveyed the premises to DeForest A. Matteson, subject to the above-mentioned mortgages. As a part of the transaction, Matteson conveyed to Davis certain residence property in Ottawa for $1,000. The trust deed and mortgage were afterwards foreclosed. The court held that Matteson, as a part of the purchase price of said farm land, agreed with Davis to pay the indebtedness secured by both encumbrances; and that the amount

due on the trust deed was $45,512.20 plus $4,000 solicitor's fee, and on the mortgage, $3,516.82. It was ordered that unless the mortgagors or Matteson pay said sums and interest thereon within ten days after the date of the decree, the master in chancery should issue a certificate in due form as provided by statute then in force. Matteson prayed an appeal and filed a bond but afterward abandoned his appeal. The property, not having been redeemed, was sold by the master in chancery for $14,800 and a deficiency judgment was rendered against Matteson for $36,001.05. This appeal is prosecuted to reverse that judgment.

It is contended by appellant, Matteson, that he did not assume and agree to pay the mortgage indebtedness and that the decree finding him personally liable was erroneous. It appears from the testimony that when the trade between Davis and Matteson was made, its terms were reduced to writing and the agreement was signed by both parties. The deed conveying the property to Matteson contained no covenant or recital binding Matteson to pay the indebtedness. Appellee offered testimony to prove that in certain conversations had by Matteson with Davis and one Bowermaster, Matteson had agreed to assume the mortgage indebtedness. This testimony was objected to on the ground that the written contract of the parties was the only evidence admissible to show the terms of the agreement and that oral testimony was not admissible to vary its terms.

A copy of the written agreement for the sale of the land was in the possession of appellees and was exhibited on the hearing but for some reason, not apparent to us, it was not offered in evidence. What its terms are we do not know. The oral testimony to support appellees' contention that Matteson agreed to assume and pay the mortgage indebtedness is vague and indefinite. Davis testified that Matteson said "he

(Matteson) would take care of those mortgages. He didn't say he would go down and pay them, he said he would take care of them." Bowermaster, Davis' agent, was even more indefinite. He first testified Matteson said he would pay them off. Later he testified that Matteson said he would take the land subject to the mortgages. On the other hand, Matteson positively denied that he promised to pay the indebtedness. There is one convincing circumstance to corroborate him. Davis went to Chicago and tendered Matteson a deed. It contained a clause binding the grantee to assume the payment of the mortgage indebtedness. Matteson refused to accept the deed because of that clause and there stated he never had agreed to assume the indebtedness. Then the present deed without such a provision was prepared by Davis and delivered to Matteson who accepted it. The fact that Matteson did not assume and agree to pay the indebtedness seems to be well established. The evidence convinces us that it was no part of the consideration that he should retain out of the purchase price a sum sufficient to pay the mortgages. He traded for the equity of Davis, and the trade was made with the understanding and agreement that Matteson would not assume or pay the indebtedness.

Counsel for appellee contend (a) that the decree for foreclosure was a final decree and definitely determined that Matteson had assumed and agreed to pay the mortgage indebtedness; (b) that he was personally liable therefor; and (c) that the findings of that decree cannot be attacked on an appeal from an order giving a deficiency judgment.

The foreclosure decree ordered Matteson and the defendants, R. R. Davis and Euphemia Davis to pay the complainant or the trustee $45,512.20 with interest within ten days, together with a foreclosure fee of $4,000. It also ordered said defendants to pay the

Merchants & Farmers Trust and Savings Bank or the trustee, $3,516.82 with interest within ten days. It was further ordered that in default of said payments being made within that time, a certificate should issue, and if the premises be not redeemed within the time fixed by law, they should be sold. No mention was made of a deficiency judgment or decree in case the premises did not sell for enough to satisfy the debt, interest, and costs. It is the contention of appellees that this decree amounts to a personal judgment against appellant.

Originally a mortgagee was relegated to his action at law to obtain a judgment for any deficiency which might be due him after the sale of the mortgaged premises. (*Eggleston v. Morrison,* 185 Ill. 577.) And in the absence of a statute, no money decree could be rendered in a foreclosure proceeding against the mortgagor or other person liable for the mortgage debt. (*Bouton v. Cameron,* 205 Ill. 50.) However, by a statute originally enacted in 1865, it is provided that in all suits directing foreclosure of mortgages, a decree may be rendered for any balance of money that may be found due to the complainant, over and above the proceeds of the sale, and that execution may issue for the collection of the balance. Such decree may be rendered conditionally, that is, the foreclosure decree may provide that the complainant shall have judgment for such balance, or, in the absence of a conditional decree, a decree for the deficiency may be rendered after the sale and the ascertainment of the balance due. A deficiency decree in no event shall be rendered, unless the party liable has been personally served or his appearance entered in the suit.

A decree which merely provides for the foreclosure and sale of lands is deemed a decree *in rem,* but if it provides for a conditional deficiency judgment, it is in that regard *in personam.* (*Eggleston v. Morrison,*

*supra.*) Its effect is to find that the complainant is entitled to a personal decree, provided, however, there is a deficiency remaining after the application of the proceeds of the sale. The decree in this case is not even a conditional one. It found the amount of the mortgage indebtedness then due. It ordered Matteson and others to pay it and directed that the premises be sold unless the said indebtedness was paid within the period fixed by law. It was not a money decree against the defendants upon which an execution could have issued. Under that decree the only penalty for non-payment was a sale of the lands. No personal judgment was rendered against the defendants on account of the indebtedness and none could have been rendered except as provided by the statute.

Complainant did not seek to obtain a conditional decree, but availed himself of the alternative provision of the statute and waited until after the amount of the deficiency was ascertained and then procured a deficiency decree. This decree was the final order which fixed the personal liability of appellant and was the only decree from which he had the right to appeal and have his liability tested. (*Cotes v. Bennett,* 183 Ill. 82, 87; *Thomson v. Black,* 208 Ill. 229; *Springer v. Law,* 185 Ill. 542; *George v. Walters,* 224 Ill. App. 1.)

In what we have said we are not to be understood as holding that a decree for foreclosure is not a final decree from which an appeal may be prosecuted. The extent of our holding is that such a decree is not a personal decree upon which execution can issue and that there is no final judicial determination as to personal liability for a deficiency until the amount of it is actually ascertained after a sale.

For the reasons above set forth, the decree of the trial court is reversed and the cause remanded.

*Reversed and remanded.*