Chilton C. Collins et al. A. H. Patek and Lillian Arndt, Appellants, v. Alexander Baim et al., Appellees.

Gen. No. 40,349.

406

Opinion filed March 28, 1939. Rehearing denied April 20, 1939.

SEYMOUR STEDMAN, of Chicago, for certain appellant; A. C. LEWIS, of Chicago, of counsel.

SEYMOUR J. FRANK, of Chicago, for certain other appellant; DONAL W. HARTFORD, of Chicago, of counsel.

HARRY A. BIOSSAT, of Chicago, for certain appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

A. H. Patek and Lillian Arndt have prosecuted separate appeals from certain orders entered by the superior court in a foreclosure proceeding, and during the pendency of the appeals an order of consolidation was here entered granting them leave to file one record, one abstract and a joint brief.

Patek's appeal is prosecuted to reverse an order or decree wherein the court denied his claim and dismissed his petition to establish ownership of mortgage bonds in the aggregate sum of $5,500, which are claimed to have been secured by a trust deed executed by Alexander Baim, Joseph J. Rausch and Katherine M. Rausch, who for purposes of clarity are hereinafter referred to as respondents.

Chilton C. Collins, trustee, had filed his bill of complaint September 29, 1931, to foreclose the trust deed executed by respondents, securing an indebtedness of

$65,000 evidenced by 149 bonds. None of the respondents appeared to defend, and an order of default was entered against them, the Humboldt State Bank, as trustee, the Humboldt Bond & Mortgage Company and unknown owners, and the cause was referred generally to a master in chancery, who, pursuant to a hearing, recommended that a decree of foreclosure be entered. On December 17, 1932, the court confirmed the master's report and entered a decree finding that appellees were justly indebted to the holders of the bonds in the principal sum of $65,000, and that they owed the aggregate sum of $73,171.23. Among other provisions of the decree it was ordered that after the filing and confirmation of the master's report of sale and distribution, in case any deficiency was shown in the respective sums due the complainant as trustee, that the court retain jurisdiction for the purpose of entering a deficiency decree for the amount remaining unpaid, if any, against respondents, whom the court found personally liable for the deficiency. The court also retained jurisdiction for the further purpose of administering the property in the hands of the receiver, to advise and instruct the complainant in respect to his powers and duties as trustee and to provide for the prompt distribution, to the persons entitled thereto under the decree, of all moneys which should come into the hands of complainant, receiver or clerk of the court under the decree, and to determine all controversies between any two or more persons claiming title to or ownership of or interest in any bonds or coupons issued under and secured by the trust deed being foreclosed.

Almost five years elapsed before the property was sold by the master pursuant to the decree of foreclosure. The master's report of sale, dated May 17, 1937, recites that the premises were purchased by Ruth McGinnis, that the proceeds of the sale were not sufficient to pay the complainant the amounts found due him for the use and benefit of the owners and hold-

ers of the bonds secured by the trust deed, and he reported a deficiency, including interest and costs of $90,412.40. The report of sale was subsequently approved and on July 9, 1937, the court entered a decree finding a deficiency in the foregoing sum, that respondents were jointly and severally personally liable therefor, that Collins, as trustee, have and recover as at common law the amount of the deficiency, and that execution issue therefor.

July 15, 1937, Patek filed the petition which is the subject matter of this appeal, alleging the facts hereinbefore set forth in relation to the foreclosure proceeding, and in addition thereto that he was the owner and holder of bonds numbered 69 to 76 and 135 to 149, both inclusive, of the face value of $5,500, which with interest added thereto amounted to $8,002.50. He further alleged that a bondholders' protective committee had been organized and that all the bonds secured by the trust deed, except those held by him, were deposited with the committee pursuant to an agreement dated May 27, 1931, but that his $5,500 in bonds were not deposited; that respondents had theretofore entered into a written agreement with the committee by which they agreed that in consideration of $1,500 to be paid to them by the committee, they were to be relieved of payment on the deficiency decree, and the property being forclosed was to be conveyed to Harry G. Zimmerman, the nominee of the committee. The petition further alleged that the judgment debtors (respondents) were not entitled to any credit of $8,002.50 due Patek on the bonds held by him, and that the deficiency judgment stands as a lien for the use of petitioner Patek; and he sought an order of court requiring Collins as trustee to assign to him a part of the deficiency judgment of $8,002.50, or in the alternative that he be authorized by order of court, in the name of the trustee, for his own use and benefit, to proceed to cause the issuance of an execution on the deficiency judgment to recover

so much thereof as was claimed to be due him and to be allowed to proceed by garnishment or any other remedy available for the purpose, to collect that part of the judgment represented by his claim for $8,002.50.

July 15, 1937, Patek ordered an execution which was returned *nulla bona,* and four days later a garnishee summons issued running against the Northern Trust Company and certain individuals and was served upon them.

July 26, 1937, within 30 days after the entry of the deficiency decree against respondents, Baim filed his answer to Patek's petition, denying that Patek was the holder and owner of bonds 69 to 76 and 135 to 149, both inclusive, and he averred that pursuant to an agreement with Collins, as trustee, these bonds, aggregating $5,500, were to remain unissued and not sold to the public, but were to be held by Collins and that they were never issued and never became a liability on the part of Baim, but remained in the possession of Collins or his representatives up to within approximately three weeks of the filing of the petition. His answer further averred that when these $5,500 in bonds were received by Patek they were overdue and subject to all defenses, and that the respondent Baim had a good and meritorious defense to all Patek's bonds. He denied that petitioner was entitled to a claim of $8,002.50, or any amount whatsoever, and prayed that upon hearing the decree should be modified and the deficiency against him should be satisfied in full and released.

Patek's petition and Baim's answer thereto, together with the petition of Lillian Arndt, which is the subject matter of the other appeal, were referred to a master in chancery who filed his report May 3, 1938, and May 5 of that year the court entered the decree from which these appeals are prosecuted, finding that no deficiency should be entered against respondents, that the garnishment proceedings instituted upon the deficiency decree be dismissed, and that the question

of costs to be assessed should be reserved for the further consideration of the court.

As to Patek's appeal it is urged (1) that the court lacked jurisdiction to amend, change or set aside the final decree after the term; and (2) that the findings of the decree entered May 5, 1938, pursuant to the second reference to the master are not supported by the evidence and are contrary to the greater weight of the evidence. As to the jurisdictional question, the record discloses that pursuant to the decree of foreclosure entered December 17, 1932, Baim entered into an agreement with the bondholders' committee February 21, 1933, which provided that the title to the premises involved in the foreclosure suit should be conveyed by respondents to the committee or its nominee, Harry G. Zimmerman, in return for which the committee was to release or waive any personal deficiency against respondents, applicable to all bonds then on deposit with the committee or which might thereafter be deposited. There had been deposited with the committee $53,300 of the bonds. This represented the entire issue except $11,700, of which Patek claims $5,500, represented by bonds 69 to 76 and 135 to 149, both inclusive. Lillian Arndt, the other appellant, claims bonds 77 to 88 and 133 and 134, both inclusive, aggregating $6,200, thus making up the total of $65,000 principal amount of bonds described in the trust. No other bonds are involved except those deposited with the committee and those upon which the claims of Patek and Arndt are predicated. Baim's agreement with the bondholders' committee was made shortly after the original foreclosure decree was entered and, as heretofore said, it provided that there should be no liability on deposited bonds. Patek's entrance into the proceeding in July, 1937, created a new factor in the situation not known to Baim, and which arose after the decree of foreclosure and after the agreement with the bondholders' committee was effected, and of course Baim had no

way of protecting himself against Patek's subsequent claim, nor did he have any notice thereof at the time of the entry of the original decree or until Patek's petition was filed—almost five years later. Notwithstanding these circumstances, Patek now claims that the findings of the decree are final and that his possession of the bonds precludes respondents from raising any equitable or legal defense to the entry of a judgment against them, because to raise such defense would set aside or violate the terms of the original decree. We do not concur in that conclusion for the following reasons: the foreclosure decree provided that the premises should be sold and after the filing and confirmation of the master's report of sale, in case any deficiency should be shown in the amounts due complainant, the court retained jurisdiction for the purpose of entering a deficiency decree, if any, against respondents, whom the court found personally liable for the deficiency. Obviously, the amount of the deficiency could not be ascertained until after the sale was held and a period of substantially four and one-half years intervened between the entry of the foreclosure decree and the master's sale; therefore, the decree could not be final as to the question of the deficiency until the amount thereof was judicially determined July 9, 1937. The law is well-settled in this State that under the circumstances of the record here presented the findings of the foreclosure decree with reference to respondents were not final until the court had judicially determined the amount of their personal liability, and this did not occur and could not have occurred until after the sale was made and the master had reported the amount of the deficiency. (*Cotes v. Bennett,* 183 Ill. 82, 87; *Springer v. Law,* 185 Ill. 542, 545; *Eggleston v. Morrison,* 185 Ill. 577, 578; *Hartman v. Pistorius,* 248 Ill. 568, 571; *Lewis v. Matteson,* 257 Ill. App. 1.) And in fixing the amount of the deficiency decree the court had juris-

diction to determine any intervening fact which would make it inequitable to enter a deficiency against appellees or which would render the entry of a deficiency decree inequitable under any showing made to the court.

This leads to a consideration of the second question involved in Patek's appeal, namely, whether Patek was the owner of the bonds claimed and equitably entitled to the relief sought by his petition. In this connection, Patek argues that under the findings of the decree the bonds which he claims were adjudicated in the original foreclosure, and that the findings of the court cannot be questioned as between him and respondents. This argument does not take into account Patek's relationship to the proceedings. He was not a party to the foreclosure decree and he is therefore not in a position to claim any benefit from its findings. Under the doctrine of *res adjudicata,* a point once adjudicated by a court of competent jurisdiction may be relied upon as conclusive upon the same matter as between the parties or their privies in any subsequent suit, but it has been generally held that the doctrine has no application against or in favor of anyone who was not a party or privy, and that the latter class of persons cannot claim the benefit of such an adjudication. (*People ex rel. Chicago Bar Ass'n v. Amos,* 246 Ill. 299, 303, and cases cited therein; *Culver v. Lincoln Sav. & Bldg. Ass'n,* 271 Ill. App. 91, 99.) By his petition Patek was seeking affirmative relief in the nature of a finding by the court that he was the owner and holder of bonds described therein. The original decree found that all the bonds were outstanding and that Baim was liable upon them, and Patek argues that this constituted an adjudication which could not later be questioned by respondents. Those findings, however, would not entitle Patek to the relief sought unless he could show by competent evidence that he was the owner of the bonds, and when

Patek filed his petition, claiming such ownership, appellees were at liberty to interpose any available defense, legal or equitable, to the entry of a judgment against them in favor of Patek.

With reference to Patek's claim for a judgment against respondents, the master, in a voluminous report, reviewing all the evidence and circumstances adduced upon the hearings, found the existence of an agreement under which the bonds claimed by Patek should remain unissued bonds, for which there should be no liability on the part of Baim. Evidence introduced before the master discloses that Patek is a practicing attorney at the Chicago Bar; that he and Rausch, one of the respondents, had been intimate friends for a long period of time; that some time prior to Patek's alleged purchase of the bonds in question he heard, through a Mr. Hogan of the Maryland Casualty Company, that Baim had offered to pay Hogan $700 if he would put Rausch in jail; that Rausch was arrested and Patek appeared in court and went on his bond; that it was about this time that Patek learned of the foreclosure proceeding in question, and that a deficiency decree had been entered and he thereupon determined that a purchase of the missing bonds would constitute a good investment for himself. He therefore proceeded to locate the bonds and after considerable difficulty and the lapse of several months he acquired them by purchase from Hyman A. Pierce for $675, on account of which he paid $525, remaining indebted to Pierce for the balance of $150. The master found that Patek's title to the bonds was defective, because Pierce had no valid title thereto. Pierce obtained the bonds from the receiver of the Humboldt State Bank. The claim is made by Patek that Pierce was the purchaser of all the assets of the Chilton C. Collins trust, and that he acquired title to the bonds in controversy from Collins, as trustee. The record discloses

that a receiver had been appointed for the Chilton C. Collins trust, in case No. B-263,714, circuit court of Cook county, entitled *Ballinger v. Collins,* and a decree was entered in that case finding and setting forth the various assets of the Chilton C. Collins trust. A full and complete inventory of these assets is listed in the decree, which was received in evidence in this proceeding. An examination of this decree and inventory shows that the bonds in controversy were not listed in any way as a part or portion of the assets of the Chilton C. Collins trust. July 14, 1934, an order was entered in *Ballinger v. Collins,* which was also introduced as an exhibit in this proceeding, and the wording of that order discloses that the cause came on to be heard upon the bids for the sale of the assets described in the decree in that case; the order further recites that the bid made by Hyman A. Pierce of $2,500 was the highest and best bid for the assets described in the decree and that Pierce's bid was accordingly accepted; and it provides that upon payment of the balance of $2,000 on his bid Pierce be vested with all right, title and interest of the successor trustee in and to *"all of the property described in the decree."* Afterward, July 19, 1934, a further order was entered in *Ballinger v. Collins,* a certified copy of which was received as an exhibit in this proceeding, which approved Pierce's bid and again confirmed the sale. It is apparent from the order that Pierce purchased only the assets that were described in the decree and that the bonds here in controversy were not included as part of the assets sold to Pierce. When the Humboldt State Bank was placed in receivership these bonds were evidently found in the vaults, where they were probably placed pursuant to the agreement between Baim and Collins that they should remain unissued. They were never listed as an asset of the Humboldt State Bank and were apparently always treated on its records as unissued bonds and

not as a liability of defendant Baim. Moreover, the bonds Patek purchased from Pierce were not in Pierce's possession but were in the possession of one Schelling, who was in the employ of the receiver, and were delivered to Patek merely upon Pierce's mistaken assurance to Schelling that they were part of the assets of the Chilton C. Collins trust, and that he had purchased them under the order of court hereinbefore referred to. Manifestly, this was not correct, because Pierce never did purchase these bonds from the trust as is indicated by the fact that the assets which he bought were specifically listed in an inventory set forth in the decree, which does not include the bonds claimed. Pierce furnished no consideration for these bonds, and the circumstances indicate that Schelling delivered them to Patek under the mistaken belief that they were included in the order of sale to Pierce and as a result of Pierce's own error in believing that he had purchased them from the Collins trust. All these matters were voluminously presented to the master in a record of over a thousand pages and he made specific findings thereon setting forth the reasons for his conclusions. After a careful examination of the record and the master's report, we are convinced that his findings are abundantly supported by the evidence and that Patek failed to maintain the allegations of his petition.

In addition to the contention that there was no liability on Baim for bonds claimed by Patek and that Patek's title to these securities was defective, respondents argue also that if Patek became the owner of the bonds he became the holder thereof after maturity and took them with notice of the defect in title; that Patek was guilty of bad faith with reference to the purchase of the bonds because his relationship to Baim and Rausch, as their attorney, would in the exercise of good faith preclude him from purchasing the bonds for the purpose of obtaining a judgment against them; but in

view of our conclusion as to the matters hereinbefore discussed and the length of this opinion we deem it unnecessary to discuss these questions.

In addition to the jurisdictional question and the discussion of the evidence relating to the ownership of the bonds, Patek advances the legal proposition that possession of the bonds is prima facie evidence of ownership and he cites cases to support his contention. While this general principle of law may be conceded, it is also well settled that the possession of bonds is merely prima facie evidence of ownership and the presumption thus established by law may be rebutted by evidence. We are satisfied that the evidence adduced by respondents sufficiently overcame any legal presumption operating in Patek's favor.

Lillian Arndt's appeal is prosecuted from an order of the superior court entered March 23, 1938, in the same proceeding, denying her a change of venue, removing the successor trustee and also from an order of May 5, 1938, finding that she was not the owner and holder of certain bonds which had been assigned to her by Helen S. Asher, and dismissing Lillian Arndt's petition for want of equity and vacating the deficiency decree entered on July 9, 1938, in the foreclosure proceeding.

The circumstances applicable to this appeal show that Lillian Arndt appeared in these proceedings for the first time March 15, 1938, when she filed her petition praying for the appointment of a successor trustee. This motion was made before Judge Fardy, who was hearing chancery motions during the temporary absence of Judge Stanton, both of the superior court. Judge Fardy entered certain orders on Arndt's petition, and later on March 23, 1938, when Judge Stanton resumed hearing his motions, Baim filed a petition seeking to vacate the orders entered by Judge Fardy March 15. It was on this occasion that Lillian Arndt

filed her petition for a change of venue, which was consented to and concurred in by Patek, the other petitioner, whose petition was still pending before the court. Arndt's petition for change of venue was denied and the petition she had filed March 15, 1938, was set for hearing on its merits before Judge Stanton for April 15, 1938. On the latter date her attorney filed a motion asking that the order denying the change of venue be vacated, that a change of venue be allowed, and in the alternative that the original order entered denying the change of venue be amended by striking out therefrom the incorporation of certain findings and the removal of the successor trustee which had been ordered by Judge Fardy. This last motion was continued to May 4, 1938, when Arndt's counsel offered in support of her petition a stenographic report of the proceedings had on the hearing on the motion for change of venue. Judge Stanton then denied the several motions of Lillian Arndt and she assigns this as ground for reversal. In preparing the record in this case before the present counsel assumed charge of the litigation some one inserted the penciled word, "before," on page 316 of the transcript, so that it would appear that the petition for change of venue was presented first. Respondents' counsel then moved to have this corrected, and an order was entered here during the pendency of this appeal so that it now appears that the hearing of the Baim petition was begun before the Arndt petition for change of venue was filed. Judge Stanton had on numerous occasions said that he would not appoint a successor trustee until the report of the master was filed with reference to the Arndt petition, but this was evidently unknown to Judge Fardy when the order of removal was entered. That reference to the master was then pending, and the record shows that after the change of venue was denied Lillian Arndt's counsel proceeded to a hearing before Judge Stanton

on the question of ownership of the bonds claimed by her, and since she made no objection to the hearing and in fact called witnesses in support of her claim she waived any right that she may have had to the change of venue. (*Noyes v. Kern,* 94 Ill. 521.)

Lillian Arndt makes the same contention as did Patek with reference to the jurisdiction of the court to enter an order at a subsequent term, vacating and setting aside the deficiency decree and ordering that no deficiency should be entered. This question has been fully discussed and the same conclusions we reached as to Patek are applicable to Lillian Arndt.

The only other ground urged for reversal is that the findings in the decree entered May 5, 1938, were not supported by any evidence adduced at the hearing. This has reference to that portion of the decree which found that neither Lillian Arndt nor Helen S. Asher, from whom Arndt claimed her assignment, were the owners and holders and never had any right, title or interest in bonds 77 to 88 and 133 and 134, signed by respondents. The sole question before the master and court was whether Lillian Arndt was the owner of the bonds or entitled to the proceeds thereof. The master recommended and the court found that she did not own these bonds. Whatever right Arndt claimed arose from the purported assignment from Helen S. Asher, who received the bonds by assignment from Logan L. Mullins, receiver of the Humboldt Bond & Mortgage Company, and, of course, if Asher had no title to the bonds Arndt could not acquire any by assignment. The evidence relating to these bonds may be summarized as follows: bonds 133 and 134, claimed by Arndt as her property, were found to have been deposited with the Chicago Title & Trust Company. Meyer Fink, one of the witnesses, so testified. Bonds 77 to 88 and 133 and 134 were not listed as assets of the Humboldt Bond & Mortgage Company or its receiver.

This appears from the testimony of George Sleigh called as a witness on behalf of Arndt. Sleigh testified that none of these bonds was ever in the possession of Humboldt Bond & Mortgage Company, and that although he made an investigation he did not find them listed among its assets. Although Humboldt Bond & Mortgage Company owned some of the bonds of this issue, those bonds were deposited with the committee in accordance with the court's instructions to deposit all first mortgage bonds held on behalf of the receiver with the committee. It further appears that when Mullins was appointed receiver of Humboldt Bond & Mortgage Company he prepared an inventory of its assets, which did not include any of these bonds. Inasmuch as Arndt's claim of ownership originated in the assignment from Mullins to Asher, it is obvious that unless Mullins had some claim of title to these bonds his assignment to Helen S. Asher and her subsequent assignment to Arndt would not vest any title in Arndt upon which she could successfully maintain her petition. Arndt's claim was predicated upon her ownership of the bonds, and the burden of proving that she was the owner rested on her. The court was evidently of the opinion that she failed to introduce any convincing evidence of her ownership and based upon the testimony of the various witnesses, who adduced evidence to the contrary, we think the court properly dismissed Arndt's petition on the ground that she had no interest in the subject matter, not being the owner or holder of the bonds, and denied her any relief accordingly.

Counsel for the respective parties argue the question of fraud and want of consideration in connection with Arndt's right to maintain her petition, but since the court held, and we think properly so, that Arndt had no interest in the subject matter because she was not the owner of the bonds, these questions are not controlling.

Several motions made during the pendency of these appeals, including the motion of respondents to dismiss the appeals, were reserved to hearing. All these motions are herewith denied.

After a careful review of the evidence, we are of the opinion that the court properly dismissed both the Patek and the Arndt petitions, and the orders of the court relating to the appeals of both these petitioners are therefore affirmed.

*Orders affirmed.*

SCANLAN, P. J., and JOHN J. SULLIVAN, J., concur.