**Sherman H. Skolnick and Peter S. Sarelas, Plaintiffs-Appellants, v. Oscar M. Nudelman, Defendant-Appellee.**

Gen. No. 52,172.

First District, Second Division.

April 23, 1968.

Sherman H. Skolnick, and Peter S. Sarelas, pro se, of Chicago, appellants.

Oscar M. Nudelman, pro se, of Chicago, appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

This appeal is taken from the dismissal, on motion of defendant, of plaintiffs' third amended complaint.

Prior to October 1962, plaintiff Sherman Skolnick was represented by plaintiff attorney Peter Sarelas in three lawsuits, one in the Superior Court of Cook County and two in the United States District Court; it appears that one of the federal cases was dismissed by the court. On October 31, 1962, Skolnick wrote a letter addressed to defendant attorney "Oscar M. Nudelman, Decalogue Society, Chicago, Ill." The letter represented that Skolnick was referred to Nudelman by a third party, and requested Nudelman to read and consider four documents enclosed therewith consisting of Skolnick's complaint in a federal court action, the transcript of proceedings in that action, several pages from the defendant's "Memorandum in Reply to Plaintiff's Brief," and a letter from the Chairman of the United States House of Representatives Judiciary Committee concerning the federal court action. It further appears that Nudelman turned over the letter and the documents to attorney Harry G. Fins for the latter's consideration, and that both Nudelman and Fins had a conversation concerning the matter a few days later.

Plaintiffs filed their original complaint in this cause on December 13, 1963, naming both Nudelman and Fins as parties defendant. A motion filed by Fins for summary judgment as to the action against him was granted on June 16, 1964, and the judgment thereon was affirmed on appeal. See Skolnick v. Nudelman, 71 Ill App2d 424, 218 NE2d 775.

Plaintiffs subsequently filed an amended complaint against Nudelman, to which was filed a motion to strike and dismiss. The amended complaint was stricken in January 1965, and plaintiffs were given leave to file a

second amended complaint which they filed later that month. Nudelman again filed a motion to strike the second amended complaint, among other relief requested, to which plaintiffs filed objections. An affidavit in support of his motion was also filed by Nudelman. A motion to strike the affidavit was filed by both plaintiffs, and Skolnick thereafter alone filed a counteraffidavit. Disposition of the matters filed in connection with the second amended complaint was assigned to Judge Samuel Epstein for hearing on June 15, 1965.

After several continuances were allowed with respect to the hearing, the cause was finally set for March 25, 1966. On March 21, 1966, plaintiffs filed a motion to disqualify Judge Epstein for the reason that he was financially interested in the outcome of the case. They alleged that the judge was a member of the Decalogue Society of Lawyers; that Nudelman "by and through his pleadings in the instant case, has involved and implicated the Decalogue Society" and "seeks to justify his intentional torts against these plaintiffs under the guise and mask of being a functionary of said Decalogue Society . . ."; that due to certain allegations made by Nudelman, the Decalogue Society "may become a necessary party-defendant in this case . . ."; that a jury decision favorable to the plaintiffs "may then become assessable against the said Judge . . . as a member of said Society . . ."; and that Judge Epstein "therefore has a pecuniary interest in this matter which disqualifies him from adjudicating the instant case."

Hearing on the motion to disqualify was had on March 23rd; the motion was denied. Also denied at the same hearing was a petition for change of venue presented by plaintiffs, without notice to the defendant, after the motion to disqualify was denied. The order of March 23rd recited:

"This cause coming on to be heard on plaintiff's motion for this Court to disqualify himself for

reasons set out in said motion, and the Court having read said motion and heard arguments of counsel,

"IT IS HEREBY ORDERED that said motion be and the same is hereby denied.

"Upon denial of said motion, plaintiffs, without notice to opposing counsel, presented a petition for change of venue from this Court and from twenty-four other Judges thereof. Upon consideration of said motion, same having been presented without prior notice to opposing counsel, and being untimely, the said motion for change of venue is hereby denied."

Hearing on the defendant's motion to strike the second amended complaint was had on March 25th; the second amended complaint was stricken and dismissed and plaintiffs were given leave to file a third amended complaint.

Plaintiffs' third amended complaint, consisting of three counts, was filed on May 4, 1966. Count I alleged interference by Nudelman, and by Nudelman in combination with Harry G. Fins, with plaintiffs' attorney-client relationship; Count II alleged defamation of Sarelas' professional and personal character, and of Skolnick's character; and Count III alleged interference with plaintiffs' civil rights. Nudelman again filed a motion to strike the third amended complaint and the hearing was assigned to Judge Epstein. It does not appear that plaintiffs in any way objected to the assignment of Judge Epstein for disposition of the motion to strike the third amended complaint. After a hearing was had on November 14, 1966, the court denied plaintiffs' motion to strike defendant's motion to strike the complaint and overruled their objections filed thereto, allowed defendant's motion to strike the third amended complaint and dismissed the complaint on grounds of scurrility.

On December 13, 1966, both plaintiffs filed a motion for rehearing and reconsideration of the November 14th order dismissing the third amended complaint. Hearing thereon was set for January 17, 1967, at which hearing Skolnick failed to appear, and the December 13th motion was denied. A subsequent motion filed by Skolnick to vacate the January 17th order was also denied. This appeal followed.

Count I of the third amended complaint alleged that Nudelman interfered with the attorney-client relationship which existed between the plaintiffs prior thereto and further alleged a conspiracy between Nudelman and Fins to interfere with the relationship. Count I specifically alleged that "as a consequence of the malconduct and malevolent acts and doings of defendant Oscar M. Nudelman," Skolnick severed his contractual relationship with Sarelas in the case in the Superior Court of Cook County in April 1963, and in the two federal cases in July 1963, and that "because of the malconduct and malevolent acts and doings of . . . Nudelman," Skolnick was forced to represent himself after said dates as "a party-litigant pro se." Count I further alleged that the letter of October 31, 1962, from Skolnick to Nudelman, referred to above, was employed by Nudelman to "set in motion, or to trigger off, a natural conspiracy between the defendant Oscar M. Nudelman and Harry G. Fins, both of whom purport to be functionaries of the Decalogue Society of Lawyers"; that Nudelman in combination with Fins, "contrived and conspired to intermeddle and interfere" in the aforesaid litigation and to "use said letter as a part of a scheme to proceed, under the sham and pretense of being a functionary of some kind of the Decalogue Society of Lawyers, to commit champerty and (sic) maintenance and barratry"; and that in furtherance of said scheme "Nudelman, in combination with Harry G. Fins, used the malevolent and diabolical instruments of rumor-spreading and slander-mongering to undermine"

Sarelas as Skolnick's attorney in the aforementioned litigation and the "instruments of threats, coercion, and terror-tactics directed in particular against . . . Skolnick, a paraplegic invalid and shut-in."

Count I also alleged that "in furtherance of said conspiracy and scheme, to terrorize and coerce . . . Skolnick to cause him to sever the contractual relationship with . . . Sarelas, and for the purpose of compelling . . . Skolnick to take on the services of . . . Nudelman and of . . . Fins, a self-declared expert on appeal work," Nudelman stated to Skolnick over the telephone, on the dates of December 12 and 13, 1962, and January 8, 1963, that Sarelas was a "regular nut," a "screwball," a "mishuginer," and a "one-man-office." It was alleged that Nudelman also stated to Skolnick that Sarelas could do no good for him, that "he has no backing. He's poorly financed and you're poorly financed"; that "you need somebody to help you"; and that "you've got good cases . . . Fins told me your lawyer Sarelas is simply not equipped to handle cases like yours" and "if you are going to fight bailiffs, you're not going to get anything. Fins could handle everything." It was further alleged that Nudelman stated during those telephone conversations that he helped to organize the Decalogue Society; that the Decalogue Society "is not what it used to be"; that "he knew the Decalogue has become a front for pounding heads together in order to make deals in litigation"; and that the "judges who belong to the Decalogue are not out to stir up trouble, they want to cover it up."

Count I also alleged that on July 10, 1963, Nudelman, "by and through Harry G. Fins, purposely and intentionally approached . . . Sarelas, and announced that he was making it his usual self-declared business to intermeddle and interfere, as a stranger," in Sarelas' lawsuits, including those wherein he was representing Skolnick, and that Nudelman and Fins were "interfering to help the opponents in said cases" against plaintiffs. Count I

299

finally alleged that on April 24, 1964, Nudelman, through Fins, stated to Sarelas that he knew certain other litigant-opponents of Skolnick intended to appeal certain decisions; that this was intended by Nudelman to mean that he was "actively in contact with and assisting" Skolnick's said opponents, inasmuch as such information had not been published; and that all such "malconduct was to perpetuate and continue their intermeddling, interference, champerty and (sic) maintenance, and barratry." The count then restated that Nudelman's purpose in all the activities as alleged was to deprive Skolnick of the attorney of his own choosing by means of "rumor-spreading, slander-mongering, and other malévolent instruments directed against" Sarelas; that defendant owed a duty to plaintiffs "not to intentionally and maliciously interfere" with the contractual relationship of the plaintiffs and not to "engage in threats, coercion and intimidation in making war upon the plaintiffs' contractual relationship"; that defendant owed a duty to Skolnick, "known to defendant to be a paraplegic invalid and shut-in, not to coerce, frighten and intimidate said plaintiff"; and that defendant acted in that regard "intentionally, sadistically, wilfully, evilly, and malignantly."

Count II realleged much of Count I and alleged the defamation of Sarelas' character as a person and an attorney. Count II further alleged that both Sarelas and Skolnick were defamed by means of a certain "libelous and defamatory statement" made by Nudelman "by and through Harry G. Fins," by means of an amendment to a motion filed by Fins to strike the original complaint herein as it applied to Fins, which motion was allowed by the trial court and which action was later upheld on appeal as hereinabove noted. It was alleged in Count II that Fins' said amendment to the motion, filed in March 1964, "falsely described and characterized certain other lawsuits of plaintiffs, as a 'series of groundless and frivolous actions filed by plaintiffs against lawyers,

a Master in Chancery, . . .' " and the like, "with the object of harassing and vexing persons who disagree with plaintiffs' point of view. Said libelous and defamatory statement was published and circulated, in and about the courthouse, under the disguise of a purported court paper having the label of" Fins' amendment to his motion to strike the original complaint. It was alleged that this "false and defamatory statement was impertinent, irrelevant and immaterial, and was circulated with malice aforethought to defame plaintiffs." Count II further alleged that there are "customs, practices and usages in Cook County, Illinois, . . . that defendants in obstruction of justice controversies are allowed, permitted and condoned to publish false and defamatory statements" to prevent plaintiffs therein from enforcing their rights; that such statements are "published and circulated in and about the courthouses . . . under the disguise and sham of being court papers . . . so that the malefactors would then have a shield of 'privilege' or 'immunity' "; that such defendants are allowed to use such immunity to foreclose action by said plaintiffs thereon, irrespective of whether the statement was made in a judicial proceeding or whether it was material to an obstruction of justice action; that the "malefactors" publish said statements "knowing full well that it is likewise the custom, practice, and usage in Cook County, Illinois, for the State's Attorney of said County to defend rather than prosecute such persons when they are sued in the Federal District Court for interfering" with the civil rights of citizens; and that "such malefactors are allowed, permitted and condoned to publish and circulate such false and defamatory statements in order to further, and to perpetuate, the aforementioned customs, practices, and usages."

Count III also realleged much of Count I and complained that plaintiffs were deprived of their civil rights as guaranteed by Title 42 of the United States Code,

section 1985(2), in that Nudelman acted in furtherance of a conspiracy, with Fins, to damage Skolnick in his person and property and "to terrorize, coerce, and intimidate him, as a federal-court party-litigant and witness; and . . . Sarelas . . . for having represented a federal-court party-litigant." Count III alleged that the said conspiracy was for the "sadistic design and purpose to deter and intimidate . . . Skolnick, known by the defendant to be a paraplegic invalid and shut-in, from attending and testifying" in the two federal court actions set out above, and for the "sadistic design and purpose of harming and injuring . . . Sarelas in his profession . . . and reputation for having enforced, or for having attempted to enforce, on behalf of . . . Skolnick, the Equal Protection of the Laws of the State Courts of Illinois" in the Superior Court of Cook County action set out above.

██ The foregoing summary represents the gist of plaintiffs' third amended complaint. A reading of the third amended complaint, which speaks for itself, clearly bears out that the trial court was justified in striking the complaint and dismissing the cause on the grounds of scurrility. As was stated by the trial judge during the hearing on the matters filed in connection with the third amended complaint, "the complaint is replete with scurrilous material that no judge should be obligated to read." Biggs v. Cummins, 16 Ill2d 424, 158 NE2d 58.

The third amended complaint, which numbers some eight single-spaced, small-typewritten pages, is replete with undue vilification of the defendant in the form of vituperations characterizing the acts allegedly performed by him as wrongfully performed, with unfounded and unsupported criticism of the Illinois courts and of the judicial process in general, and with unfounded conclusory allegations of misfeasance in the office of the Cook County State's Attorney. Furthermore, many of the allegations contained in the third amended complaint

are subject to the same objections as those contained in the original and the two prior amended complaints, all of which were likewise stricken.

The charge of malicious interference with contract is based primarily upon the allegations of "threats, coercion and intimidation," and the like, of Skolnick by Nudelman, who was alleged to have acted" "intentionally, sadistically, wilfully, evilly, and malignantly" in that regard, on the dates of December 12 and 13, 1962, and January 8, 1963, in an effort to "interfere and intermeddle in the contractual relationship" of plaintiffs. It should be noted, however, that the complaint alleges that Skolnick did not sever the attorney-client relationship until April 1963 with regard to the state court case, and July 1963 with regard to the two federal court cases, a significant length of time in view of the serious character of the means allegedly employed by defendant through which he sought to accomplish his purpose.

Although it is claimed plaintiffs' contractual relationship was severed in April and July 1963 in the respective lawsuits, it is worthy of note that plaintiffs thereafter jointly filed and collaborated in the filing of the four complaints in this action, as well as some 27 out of the approximately 35 motions, objections, memoranda, and the like, filed on plaintiffs' side of this action. These include the filing of the appeals from the orders entered below as to both defendant and Fins, as well as the advancement of the arguments in the briefs on the respective appeals. A consideration of these pleadings, etc., reveals a close collaboration by and between the plaintiffs in the drawing of the same, inasmuch as many of the allegations and much of the material therein set forth concerning each individual plaintiff are so interwoven and intertwined that it is at times difficult to determine to which of the plaintiffs the allegation refers or toward which plaintiff the defendant's alleged injurious actions were intended.

■ ■ Finally, the malicious interference with contractual relations allegation contained in the third amended complaint is based entirely upon the conclusions of the pleaders and the "profuse and vituperous proliferation of adjectives." The allegations that Skolnick "severed his contractual relationship with his then attorney . . . Sarelas . . . as a consequence of the malconduct and malevolent acts and doings of defendant Oscar M. Nudelman, as hereinafter stated" and that he "was forced to represent himself . . . as party-litigant pro se, all because of the malconduct and malevolent acts and doings of the defendant" are no more than conclusions. The complaint fails to set forth the ultimate facts necessary to establish a relationship between the alleged severance of the plaintiffs' attorney-client relationship and the actions of the defendant which allegedly took place several months before. While it is true that one who has been injured by another's malicious interference with his contractual relationships may maintain an action in damages therefor, Doremus v. Hennessy, 176 Ill 608, 52 NE 924, and that this rule is applicable to the attorney-client relationship, Herman v. Prudence Mut. Cas. Co., 92 Ill App2d 222, 235 NE2d 346, the complaint must nevertheless allege the necessary matters in order to state a good cause of action. Northern Ins. Co. of N. Y. v. Doctor, 23 Ill App2d 225, 228, 161 NE2d 867. Here, the allegations pertaining to the "inducement" and to the "breach" are mere conclusions and consequently cannot support an action for malicious interference with contractual relations.

The claim is also made in the third amended complaint that Sarelas was defamed in his personal reputation and his professional reputation by defendant's calling him a "nut," a "mishuginer," a "screwball," and the like, and that both Sarelas and Skolnick were defamed in their respective reputations by means of the "Amendment to Motion of Harry G. Fins to Strike Complaint" filed

by Fins in March 1964 with respect to the original complaint as it applied to him.

■ ■ The terms "nut," "mishuginer," and the like, do not connote opprobrium or reprehensibility. At most they are epithets, describing a "peculiar or eccentric person." While they may be vituperative and abusive, they amount to no more than "name-calling" and are not defamatory. See e. g. Kennedy v. Crouch, 191 Md 580, 62 A2d 582, 587; Walker v. Tribune Co., 29 F 827. With respect to the terms "one-man-office," "no backing," and the like, as defendant allegedly described Sarelas to Skolnick, these terms do not impute a want of integrity or capacity in Sarelas' legal profession, and fall far short of disparaging his professional reputation. See also Torres v. Huner, 150 App Div 798, 135 NYS 332.

■ As to the claim that plaintiffs were defamed by the amendment to the motion to strike filed by Fins in connection with the original complaint and that Nudelman should be held responsible therefor, the amendment in no way involved Nudelman, nor does it appear that he in any way took part in its creation or filing. Secondly, the pleading was a legal document filed in connection with a pending lawsuit and was therefore privileged.

■ The final allegation contained in the third amended complaint concerns the alleged violation of plaintiffs' civil rights as guaranteed by section 1985 (2) of Title 42 of the United States Code. That section provides that if two or more persons conspire to deter, by force, intimidation, or threat, any party or witness from attending or testifying in any court in the United States, or conspire to impede or hinder any citizen or to injure him for enforcing or attempting to enforce the right of any person to the equal protection of the laws, the parties guilty thereof shall be liable to an action in damages for the injuries so inflicted. 42 USCA § 1985 (2). Count III is based entirely upon conclusions and conjecture. By means of such phrases as "in furtherance of a con-

305

spiracy to damage," "a conspiracy to hinder, obstruct, impede . . . ," "for the sadistic design and purpose to deter plaintiff . . . ," and the like, the count seeks to allege interference with plaintiffs' civil rights. No allegation of fact is alleged upon which may be based an action for obstruction of justice or interference with plaintiffs' right to appear or to otherwise participate in the actions pending in the courts in which they were interested.

With regard to the allegation that defendant "intermeddled" in other of plaintiffs' lawsuits, thereby committing the offenses of champerty and maintenance, the matters alleged in the third amended complaint show only that defendant stated he was "assisting" plaintiffs' opponents in those cases. At best, this allegation falls into the same category as the interference with contract allegation, dealt with above.

Plaintiffs further contend that Judge Epstein had an interest in the outcome of these proceedings and consequently committed error in refusing to disqualify himself, on plaintiffs' motion, from the hearing on the matters filed in connection with the second amended complaint. We disagree.

Plaintiffs' contention in this regard is based entirely upon supposition and conjecture. Plaintiffs theorize that, because Judge Epstein was a member of the Decalogue Society and because defendant, "by and through his pleadings in the instant case, has involved and implicated the Decalogue Society . . ." in these proceedings by affirmative allegations that he is a "past President of the Decalogue Society . . ." and that he is a "member of the Board of Managers of said Decalogue Society," the Decalogue Society may "become a necessary party-defendant in this case" upon trial thereof; that Judge Epstein may be called as a witness at said trial; and that any judgment favorable to plaintiffs upon trial of the issues would therefore become assessable against the

judge. (Albeit more than two years had elapsed since the allegedly actionable actions complained of had transpired and none of the pleadings theretofore filed by plaintiffs alleged any facts showing defendant acted "for and on behalf of" the Decalogue Society, pleadings were filed by plaintiffs after their motion to disqualify was filed, including their third amended complaint, and the Decalogue Society was never in fact made a party to these proceedings; it further does not appear that plaintiffs in any way attempted to make it a party hereto.) Under the circumstances, the trial judge did not abuse his discretion in refusing to disqualify himself from these proceedings.

The cases cited by plaintiffs in support of their position in this regard are not in point. In re East Maine Tp. Community Ass'n, 15 Ill App2d 250, 259–262, 145 NE2d 777, involves a situation where the judge presiding at an action instituted by his attorney son, which was later taken over by the judge's son-in-law, refused to disqualify himself, although other judges were available to hear the matter; the reviewing court held this to be error. Commissioners of Union Drain. Dist. v. Smith, 233 Ill 417, 84 NE 376, involved the question of whether a tax assessor, who owned land within the area where he was making assessments, was competent to make such assessment. The court held, under the circumstances, he should have disqualified himself. It clearly appears that neither of these situations is applicable to the case at bar.

After Judge Epstein denied plaintiffs' motion to disqualify, they presented, without prior notice to defendant, a petition for change of venue from the hearing on the matters filed in connection with the second amended complaint. The petition was denied by the trial court on the grounds that it was both untimely and was presented without prior notice to defendant. While there appears

to be a division of authority as to whether plaintiffs waived error, if any, which the trial judge may have committed in denying the petition for change of venue by their proceeding to a hearing thereafter and participating therein (see Howarth v. Howarth, 47 Ill App2d 177, 197 NE2d 736; Lyles v. Stanford, 3 Ill App2d 113, 120 NE2d 238; but see Balaszek v. Blaszak, 405 Ill 36, 89 NE2d 796; Patek v. Baim, 299 Ill App 405, 20 NE2d 298), plaintiffs nevertheless failed to object to the subsequent assignment of Judge Epstein to dispose of the matters filed in connection with the third amended complaint, from the dismissal of which this appeal is taken.

After their second amended complaint was stricken by Judge Epstein on March 25, 1966, plaintiffs were given leave to file a third amended complaint, which they filed on May 4, 1966. On August 15, 1966 defendant filed a motion to strike and dismiss the third amended complaint. On August 31, 1966, on motion of defendant to set his motion to strike and dismiss for hearing and on motion of plaintiffs for an extension of time within which to file objections to defendant's motion and to set the matter for hearing on the contested motion calendar, the assignment judge granted the extension of time requested and assigned the disposition of the matters filed in connection with the third amended complaint to Judge Epstein. Plaintiffs filed their objections to defendant's motion to strike and dismiss on November 1, 1966, and defendant filed his reply thereto a few days later. The matter came on for hearing before Judge Epstein on November 14th, some two and one-half months after his assignment to hear the matters filed in connection with the third amended complaint, without any objection having been raised by plaintiffs. It should also be noted that plaintiffs' petition for change of venue was not presented to Judge Epstein until after he had ruled on their motion to disqualify. We find no error in this ruling.

308

The final point raised by plaintiffs is that they were deprived of due process of law due to the trial court's alleged "threats and terror against . . . Skolnick . . . so that he would not appear in open court." Although this matter was introduced into the record solely through Skolnick's motion of February 16, 1967, to vacate the order of January 17, 1967, rather than by the proper method of a transcript of proceedings or a bystander's report of proceedings, it appears that this contention relates to a colloquy which occurred between Skolnick and the trial judge at the November 14th hearing with respect to the matters filed in connection with the third amended complaint. The argument is made that, at the November 14th hearing, the trial judge threatened to place Skolnick in jail, "without lawful cause," and that both Skolnick and his father, who accompanied Skolnick with the latter's wheelchair, were thereafter afraid to appear in the judge's courtroom and were thereby effectively foreclosed from the January 17th hearing. It clearly appears that the alleged "threats and terror" which the trial judge allegedly visited upon Skolnick at the November 14th hearing arose out of the following colloquy which occurred between the trial judge and Skolnick during a conversation concerning the Decalogue Society and the trial judge's prior refusal to disqualify himself from hearing the matters filed in connection with the second amended complaint:

"THE COURT: What does the Decalogue Society have to do with it? It is a formal membership.

"MR. SKOLNICK: Yes, but you have made statements as a party. You have waded through almost 100 pages (defendant's motion to strike the third amended complaint), and you found nothing wrong there. Then you looked at our complaint—

"THE COURT: I am not a party. I am ruling on a motion that has been presented. I agree with the

legal principles in the motion to strike, and I am allowing that motion, and that is all there is to this case.

. . . . . .

"MR. SARELAS: He (defendant) tells you that he wants the seal of the Decalogue Society. He is the one that brings it in, not us.

"THE COURT: I am taking no cognizance of that society. That is no part of this lawsuit.

"MR. SKOLNICK: Well, he has made them such. He has made them such by his allegation that he has made contrary to our third amended complaint. I told Your Honor it would be better for you to disqualify yourself.

"THE COURT: Why should I? I am a judge of this Court.

"MR. SKOLNICK: Yes, but you haven't given us a fair hearing.

"THE COURT: I would disqualify—

"MR. SKOLNICK: You haven't. You have gone through 100 pages in this matter.

"THE COURT: Don't go too far. You are talking about me.

"MR. SKOLNICK: Your Honor—

"THE COURT: If you don't want to be locked up for contempt, you better watch your language when you talk to me.

"MR. SKOLNICK: Just a minute.

"THE COURT: Watch your language.

"MR. SKOLNICK: I have done nothing to be discourteous. Just a minute. He has made false statements in all of his other litigation, and you made no objection to it, Judge, to that. Yet you say you find all kinds of faults with our facts and allegations. That does not seem fair. . . ."

The "threats and terror" which the trial judge is alleged to have visited upon Skolnick consequently appear to be no more than an admonition on the part of the trial judge that Skolnick either temper his remarks to the judge or face a contempt citation. It consequently appears that the claim raised in this context is without merit.

For these reasons the orders and judgment are affirmed.

Orders and judgment affirmed.

McNAMARA and LYONS, JJ., concur.